United States v. Diaz is our last case for today. Mr. Mitchell. Good afternoon, your honors. May it please the court, my name is Gregory Mitchell. I represent Mr. Jorge Diaz. Judges, I would like to start the presentation primarily with looking at the argument that I highlighted in my reply brief that I believe still hasn't been addressed. And that's essentially whether or not this grand jury statement is the type of statement that the court has recognized that has the type of hearsay exception should acknowledge. And I think in looking at the government's brief, I think it's telling on page 17 of their brief where they cite in Owen's essentially what the type of evidence and statements and assertions that the rule allows. And they add in brackets or other testimonial statement, and then they add in brackets or statement. Because the facts in this case raises the question, and I think Judge Coleman saw it at the district court, is whether a truncated statement prepared solely by the prosecution after several interviews with a co-defendant who is clearly involved in this case. And then submits that to the grand jury and now wants to represent that that is a voluntary particularized statement by that person in the grand jury that should be given the kind of same trustworthiness of credit as if this person testified under oath, was asked questions by the prosecution. That the grand jurors who may have had questions may also could have asked questions, and then those testimony could be challenged if in fact they then began to change their testimony later. The real concern in this case, Judge, goes to the issue of the due process and the confrontation clause. Because when you review the about the conspiracy and the involvement from the very beginning. And they had evidence during the investigation that there was someone else in his family, his brother, who when they researched and they arrested him in his room, separate and apart from whether Mr. Jorge Diaz was, and found evidence to implicate him as being part of the knew with respect to his involvement. And the way they got around it, and this is the problem that I had, the way the government got around it, is that they began to interview Ms. Bonilla repeatedly over time, had her involvement, and then they prepared a statement, prepared a statement, summarizing a truncated statement about all of these different interviews to make sure that the statement that she would provide by the government would... I didn't think we were here about the rule of completeness. Did you ask the district court to admit all of her testimony? I think... To order the prosecutor to bring out all of her testimony? No, Judge. Okay, so we're not here on a rule of completeness basis. We're here about the hearsay rule. Yes, Judge. And you really need to discuss the text of Rule 801 D1A. Yes, Judge. And the text implies, as I point out in my brief, Judge, at 26, the implication of it is that there's some sense of trustworthiness as to why it should be... It doesn't say anything about trustworthiness. It just says it's not hearsay if the witness is in court. That's what it says. Because the statement is... Because it has a rule in it. The rule is if the witness is in court, it's not hearsay. But 801 talks about what hearsay is, Judge, and the reason why the reliability is the crux of the whole hearsay exception and the rules. And so you can't simply look at the rule, in my opinion, given what the... Why not? Because I think the Supreme Court talked about it, and I think it's the Idaho case that I cite, Judge, for you, Idaho versus Wright in 1990, where it kind of explains that you have to look at the text in the context to which this statement that is being offered as, so you can determine whether or not it has the indicia of credibility and trustworthiness to allow it simply to come in. That's not what 801D1A is about. There's a separate rule for especially reliable testimony. And I think you just said... Are you asking us just to merge them or to treat D1A as if it had vanished? No, Judge. I want you to consider 801D1A as part of 801, as essentially indicating that there is a premise that you have to essentially have someone to at least accept, accept that this prior statement that was given at the grand jury was in fact their statement. They have to even acknowledge that it was their statement. And I think that's the language of the court's decision, is that the person essentially gave a statement prior and acknowledged that fact. That's not in D1A either. And I understand that, Judge. I do. And I understand, Judge Easterbrook, that we're looking purely at 801D1A. But I don't think that the concept of applying the hearsay exception, you can simply ignore the whole basis of why it exists in the first place. What would the limiting principle be there? Are we also going to say, okay, if we're admitting business records, are we going to look to see if those business records are independently reliable? Or is that just they come in and you get to argue what you get to argue? I think, again... I think if we're going to apply it to one exception, my point is are we just applying it to every exception? Well, again, 801D1A is not an exception to the hearsay rule. It's the definition of whether it's hearsay or not. And the court has made a rule that says it's not going to be hearsay because it is fundamentally reliable. Not because it was fundamentally reliable. Because the witness is in court. Look, what you're arguing is that Rule 807, the residual exception, should be the only thing we look at, and that if something doesn't qualify to come in under Rule 807, it doesn't come in. We've been administering this set of rules for a very long time without trying to merge everything into Rule 807. And again, Judge, and the reason... And looking at those cases that you've applied, it clearly applies to statements that were given under oath in the grand jury that the person has affirmed they gave it. Not that there was a denial that it was ever a statement that they gave. Not that there was a denial that that affidavit that was submitted was not my signature. This is a situation where the rule sort of trumps everything else that we want in the adversarial process in terms of due process. Because clearly, the Confrontation Clause doesn't simply say that the person shows up at trial. They have to be willing to testify so you can have an opportunity to give a cross-examination. We have considered and rejected that precise argument in earlier cases. And the Supreme Court statement of the rule has been, there is no Confrontation Clause problem if the declarant is in court. It didn't say anything about the declarant being in court and not truculent. In my reading, Judge, I thought was prepared so they could be questioned and so that the challenge, which is the crux of the cross-examination, so it can be established. So that, in fact, you can challenge the credibility so the juries can weigh it. That's the whole point, that they have to be there. Simply being there isn't enough as far as I can tell. What Supreme Court case would you cite for that proposition, that simply being in court is not enough? Judge, I think Owen sort of outlines that. And it talks about the opportunity to bring out such matters as the witness's bias. Owen talks about the opportunity to address these issues, not simply having someone's warm body in court so you can essentially say, well, they're here, and that's enough. I don't think that the language has to be where the rule says, this is what we mean by showing up, understanding that we're talking about the admission of evidence and statements. I see my time, Judge. I'll reserve that for the rest of the questions. Certainly, Mr. Mitchell. Thank you. Ms. Morgan. Good morning, and may it please the Court. Alexandra Morgan on behalf of the United States. The District Court properly permitted the government to introduce Ms. Bonilla's prior grand jury testimony after she testified that she could not recall the events in question. The Confrontation Clause and the Rules of Evidence permit the substantive use of prior under oath statements, including statements made before the grand jury, just like the statement here. The exact format of Ms. Bonilla's prior under oath statement and defendant's argument that it wasn't in a specific question and answer format really has no bearing on this inquiry. What is important under Rule 801 is that the statement was given under oath and at another hearing or proceeding, which is precisely what happened here. And I'll also note that the parties here stipulated that the grand jury statement was Ms. Bonilla's prior grand jury statement as of a certain date. Along those lines, it is not relevant that Ms. Bonilla could not recall ever testifying in front of the grand jury or denied making the statement. Has there been a diagnosis of senile dementia? No, Your Honor. Then why wasn't there a prosecution for perjury? This is obviously false testimony. I think that's right. I think that's a fair reading that this was totally feigned amnesia. I can't answer the question as to why there wasn't a prosecution. It's up to the executive branch. You're not answerable to us for that. But I will say that on multiple occasions, this court has determined that that difference of feigned versus genuine amnesia doesn't matter to the inquiry. Ms. Bonilla took the stand. She was subject to cross-examination, and that provided defense counsel with the tools to attack her credibility before the jury, and that's exactly what happened here. In these circumstances, the Confrontation Clause and Rule 801 were satisfied. If there are no further questions, the government requests that this court affirm defendant's convictions and sentence. Thank you. Mr. Mitchell? If the court has any questions to attack, please rebuttal. Seeing none, thank you, Mr. Mitchell. The case is taken under advisement, and the court will be in recess.